| | |
|---|---|
| CHARLES RUDOLPH, | Case No. 17-10953 |
| Plaintiff, | SENIOR U.S. DISTRICT JUDGE |
| v. | ARTHUR J. TARNOW |
| SHERYL LLOYD, ET AL., | U.S. MAGISTRATE JUDGE |
| | ELIZABETH A. STAFFORD |
| Defendants. | |

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS [17], GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DECLARATORY RELIEF, AND REINSTATEMENT [24]**

Charles Rudolph, a United States Army veteran, worked in Custodial Operations at Wayne State University for approximately 14 years, until he was fired on February 24, 2015. Almost immediately after being discharged, Rudolph requested a hearing pursuant to the Michigan Veterans Preference Act ("MVPA"), which limits the circumstances in which veterans may be dismissed from public employment jobs. Defendants – Custodial Operations supervisors, members of the Wayne State Board of Governors, and the President of Wayne State University – refused to hold the hearing.

Rudolph argues that Defendants violated the MVPA and the due process clause of the 14th Amendment by depriving him of his constitutionally protected property interest in employment. He seeks reinstatement to his employment;

declaratory relief indicating that he cannot be terminated absent a hearing and that the failure to provide such a hearing constitutes a continued due process violation; and damages from the former Director and Associate Director of Custodial Operations, Defendants Sheryl Lloyd and Donald Wrench, who are sued in their individual capacities.

For the reasons set forth below, Defendants' Motion to Dismiss [Dkt. 17] is **DENIED**. Plaintiff's Motion for Partial Summary Judgment, Declaratory Relief, and Reinstatement [24] is **GRANTED IN PART**. All claims pertaining to Defendant Diane Sevigny-Lefebvre are **DISMISSED**.[1]

## FACTUAL BACKGROUND

Rudolph began having problems at work in May 2010, when he was issued a written reprimand for poor performance and failure to follow instructions. *See* Dkt. 1-2, Pg. ID 21-22. Two years later, in May 2012, Rudolph was suspended for one day. Additional, longer suspensions followed in April and May 2013. *Id.*

An incident that occurred on January 26, 2015 seems to be the straw that broke the camel's back. On that day, Anthony McKinnon, Rudolph's supervisor, noticed that Rudolph was not at his work area at the designated start time. An investigative interview was held on February 13, 2015. Rudolph explained that he'd left his work area without permission because he needed to get his work

---

[1] Plaintiff's counsel informed the Court that Ms. Diane Sevigny-Lefebvre no longer works at Wayne State.

equipment from his car. *Id.* The Associate Director of Custodial Operations, Defendant Sheryl Lloyd, rejected Rudolph's explanation because he was absent from his work area for an extended period of time. *Id.* She terminated Rudolph effective February 24, 2015.

Three days later, Rudolph wrote to Governor Snyder, requesting "a meaningful termination hearing." Dkt. 1-3. On March 25, 2015, Rudolph, through counsel, wrote to Governor Snyder a second time, again asking for a Veterans Preference hearing. That same day, the Governor's Office contacted Rudolph and informed him that the Governor was not responsible for facilitating the hearing. Rudolph's lawyer then delivered to Defendants a written request for a Veterans Preference Hearing and a copy of Rudolph's correspondence with the Governor. Counsel for Wayne State responded to Rudolph on March 30, 2015. She directed Rudolph to pursue his remedies through union representatives and through the grievance process outlined in the Collective Bargaining Agreement ("CBA") between Rudolph's union and Wayne State.

According to a document signed by A.L. Rainey, Jr., the Wayne State University Director of Labor Relations, on May 21, 2015, Rudolph was not eligible for appeal to arbitration because any appeal efforts would be untimely. *See* Pl.'s Ex. K. Rudolph filed his Complaint [1] approximately two years later, on March 27, 2017.

## I. Defendants' Motion to Dismiss

### LEGAL STANDARD

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6), which requires the Court to "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### ANALYSIS

Defendants argue that Plaintiff has failed to establish the existence of a constitutionally protected property interest. They also contend that Wayne State is not subject to the MVPA and that the MVPA provides no cause of action against individuals. Finally, Defendants claim that Plaintiff's due process rights were protected under the terms of the Collective Bargaining Agreement ("CBA") that governed his employment with Wayne State.

## A. Wayne State University is subject to the MVPA.

Defendants note that Plaintiff has not named Wayne State as a defendant in this matter. Even if he had, however, Defendants argue that Wayne State is not subject to the MVPA.

Michigan case law – in which courts have held that public universities are public employers for the purposes of other labor laws – suggests otherwise. For example, in *Peters v. Michigan State College*, 320 Mich. 243, 250-51 (1948), the Michigan Supreme Court held that Michigan State College was subject to the provisions of the Michigan Workmen's Compensation Act because the Act did "not undertake to change or disturb the educational activities of" the College. *Id.* at 250. Rather, it was "enacted to promote the general welfare of the people of this State." *Id.* at 250-51. The College, the court explained, did not have the authority to "disturb[ ] the general relationship in this State of employer and employee." *Id.* at 250. Similarly, in *Regents of University of Michigan v. Michigan Employment Relations Commission*, 389 Mich. 96, 104 (1973), the Michigan Supreme Court determined that the University of Michigan was a public employer within the meaning of the Public Employees Relations Act ("PERA"). The court defined the university as

> a public body corporate deriving its being from the people, and is supported by the people, and the regents, who are State officers, are elected by the people.

*Id.* at 105; *see also Board of Control of Eastern Michigan University v. Labor Mediation Board*, 384 Mich. 561, 566 (1971) (the court found "no plenary grant of powers which, by any stretch of the imagination, would take [the University's] operations outside of the area of public employment.").

The legitimate "concern for the educational process to be controlled by the Regents," the court said, "does not and cannot mean that [the University is] exempt from all the laws of the state." *Id.* at 107. The people of Michigan, "through the passage of Article IV, section 48 of the 1963 Constitution have deemed the resolution of public employee disputes a matter of public policy." *Id.* Finally, the court explained,

> The University of Michigan is an independent branch of the government of the State of Michigan, but it is not an island. Within the confines of the operation and the allocation of funds of the University, it is supreme. Without these confines, however, there is no reason to allow the Regents to use their independent to thwart the clearly established public policy of the people of Michigan.

*Id.* at 108 (quoting *Branum v. State*, 5 Mich.App. 134, 138-39 (1966)).

In support of their argument, Defendants rely on a February 1932 Opinion Letter from the Michigan Attorney General, who opined that employees of the University of Michigan did not fall under the Veterans Preference Act. (Dkt. 27, Pg. ID 341). However, several cases cited to in the letter have been overruled. *See, e.g.*, *Weinberg v. Univ. of Michigan Regents*, 97 Mich. 246 (1893), *overruled by W.T. Andrew Co., Inc. v. Mid-State Sur. Corp.*, 450 Mich. 655, 665-66 (1996). The

*Id.* at 105; *see also Board of Control of Eastern Michigan University v. Labor Mediation Board*, 384 Mich. 561, 566 (1971) (the court found "no plenary grant of powers which, by any stretch of the imagination, would take [the University's] operations outside of the area of public employment.").

The legitimate "concern for the educational process to be controlled by the Regents," the court said, "does not and cannot mean that [the University is] exempt from all the laws of the state." *Id.* at 107. The people of Michigan, "through the passage of Article IV, section 48 of the 1963 Constitution have deemed the resolution of public employee disputes a matter of public policy." *Id.* Finally, the court explained,

> The University of Michigan is an independent branch of the government of the State of Michigan, but it is not an island. Within the confines of the operation and the allocation of funds of the University, it is supreme. Without these confines, however, there is no reason to allow the Regents to use their independent to thwart the clearly established public policy of the people of Michigan.

*Id.* at 108 (quoting *Branum v. State*, 5 Mich.App. 134, 138-39 (1966)).

In support of their argument, Defendants rely on a February 1932 Opinion Letter from the Michigan Attorney General, who opined that employees of the University of Michigan did not fall under the Veterans Preference Act. (Dkt. 27, Pg. ID 341). However, several cases cited to in the letter have been overruled. *See, e.g.*, *Weinberg v. Univ. of Michigan Regents*, 97 Mich. 246 (1893), *overruled by W.T. Andrew Co., Inc. v. Mid-State Sur. Corp.*, 450 Mich. 655, 665-66 (1996). The

other cases referred to in the letter are either not dispositive, or have been implicitly overruled by the cases discussed above.

The Veterans Preference Act applies to Wayne State University. Plaintiff's employment with Wayne State, and his protected status under the VPA, does not implicate an issue "that clearly infringes on the university's educational or financial autonomy." *Federated Publications, Inc. v. Bd. of Trustees of Michigan State Univ.*, 460 Mich. 75, 87 (1999). The people of Michigan enacted legislation that provides certain protections to honorably discharged veterans in public employment positions; this is a valid regulation that is "designed to provide for the general welfare of society and does not extend into the university's sphere of educational authority. *W.T. Andrew Co., Inc.*, 450 Mich. at 668.

### B. The applicability of the MVPA to the individual Wayne State Defendants

As mentioned above, Plaintiff did not name Wayne State as a defendant in this action. Instead, he sued the former Associate Director and Director of Custodial Operations in their individual capacities for monetary damages; and the current Associate Director of Custodial Operations, members of the Board of Governors, and the Wayne State President, in their official capacities for reinstatement and other equitable remedies.

Defendants contend that the MVPA applies to public *employers*, and that Plaintiff has no cause of action against them as public *employees* of Wayne State.

The essence of Defendants' argument is that Plaintiff should have sued Wayne State, his employer, rather than the named individuals, who, like Plaintiff, are Wayne State employees.

1. **Individual capacity suit against Lloyd and Wrench**

Plaintiff submits that Lloyd and Wrench intentionally fired him without due process, rendering them liable in their individual capacities. Plaintiff seeks compensatory and punitive damages against Lloyd and Wrench, including lost wages and damages for emotional distress.

A § 1983 individual capacity claim "seeks to hold an official personally liable for the wrong alleged." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989). "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. City of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).

Plaintiff has set forth factual allegations sufficient to meet the 12(b)(6) threshold. Lloyd and Wrench were directly involved in and responsible for Rudolf's firing. In addition, they neither provided for nor facilitated any kind of

pre- or post-termination hearing. *See Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir. 2011).

### 2. Official capacity suit against the individual WSU defendants

Plaintiff sues the individual Wayne State Defendants in their official capacities. "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Plaintiff avoids any Eleventh Amendment immunity issues because he seeks "injunctive relief to stop violations of federal law," specifically, his 14th Amendment due process rights. *Cimerman v. Cook*, 561 Fed. Appx. 447, 449 (6th Cir. 2014) (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)). The States' federal court immunity "does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising*, 427 F.3d 351, 358-59 (6th Cir. 2005).

Plaintiff's official capacity suit against the Wayne State Board of Governors and Wayne State's President survives because for all intents and purposes, Plaintiff's official capacity claim is essentially against Wayne State itself. *See Hafer*, 502 U.S. at 25. Wayne State improperly terminated Plaintiff's employment without a hearing pursuant to the MVPA.

## C. The Collective Bargaining Agreement

Defendants assert that Plaintiff's due process rights were protected under the terms of the CBA. They also submit that Plaintiff did not exhaust his administrative remedies as required by the CBA. Plaintiff claims that the CBA is irrelevant to the due process required for protecting his interests under the MVPA.

That Rudolph may not have exhausted his administrative remedies under the CBA is not a bar to this action. He had a right to proceed in this case on his "claims pursuant to [the MVPA] regardless of" the CBA. *Florence v. Department of Social Services*, 215 Mich.App. 211, 214 (1996). The Supreme Court has explicitly held that arbitration "cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 290 (1984); *see also Arslanian v. Oakwood United Hospitals, Inc.*, 240 Mich. App. 540, 550 (2000) ("mandatory labor arbitration of civil rights claims is inappropriate."). In addition, Sixth Circuit law provides that an arbitration clause in a collective bargaining agreement must contain "clear and unmistakable language . . . to waive procedural due process rights." *Morrison v. Warren*, 375 F.3d 468, 474 (6th Cir. 2004) (citing *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78-79 (1988)). There is no evidence of such language in the contract at issue here.

## II. Plaintiff's Motion for Partial Summary Judgment

### LEGAL STANDARD

On a Rule 56 motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An additional two-step analysis is needed to determine whether a 14th Amendment due process clause claim "establishes a genuine issue of material fact as to the deprivation of a constitutional right." *Moss v. Bieri*, 134 Fed. Appx. 806, 810 (6th Cir. 2005). First, the Court determines "whether the plaintiff has a property interest entitled to due process protection." *Mitchell v. Fankhauser*, 375

F.3d 477, 480 (6th Cir. 2004). If Plaintiff has such a protected property interest, the Court then "determine[s] what process is due" with respect to that property right. *Id.*

## ANALYSIS

**1. Plaintiff has a property interest in continued employment**

A property interest in continued employment is "not created by the Constitution." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Rather, it is "created and . . . defined by existing rules or understandings that stem from an independent source such as state-law." *Id.* Plaintiff contends that the MVPA provides him with a property interest in his employment with Wayne State.

The relevant portion of the MVPA provides:

> No veteran . . . holding an office or employment in any public department or public works of the state . . . shall be removed or suspended . . . except for official misconduct, habitual, serious or willful neglect in the performance of duty, extortion, conviction of intoxication, conviction of felony, or incompetency; and such veteran shall not be removed, transferred or suspended for any cause . . . except after a full hearing before the governor of the state if a state employee . . . as a condition precedent to the removal, transfer, or suspension of such veteran, he shall be entitled to a notice in writing stating the cause or causes of removal, transfer, or suspension at least 15 days prior to the hearing . . . and such removal, suspension or transfer shall be made only upon written order of the governor . . . where such veteran has been removed, transferred, or suspended other than in accordance with the provisions of this act, he shall file a written protest with the officer whose duty . . . it is to make the removal . . . within 30 days from the day such veteran is removed . . . otherwise the veteran shall be deemed to have waived the benefits and privileges of this act: Provided, however, Said hearing shall be held within 30 days of filing such notice . . .

MCL § 35.402.

The purpose of the MVPA was to grant veterans "a preference in original employment and retention thereof in public service.'" *Valentine v. McDonald*, 371 Mich. 138, 145 (1963). Before an employer takes adverse action, the employee-veteran is entitled to notice and a hearing. The Act "converts at-will public employment positions into ones that are terminable only for cause." *Sherrod v. City of Detroit*, 244 Mich.App. 516, 523 (2001). Therefore, as a matter of law, the MVPA created Plaintiff's property interest in his employment. *Jackson v. Detroit Police Chief*, 201 Mich.App. 173, 176 (1993) (because the MVPA "converts at-will public employment into just-cause employment . . . it granted the plaintiff a property right in continued employment."); *see also Deleon v. City of Ecorse*, No. 05-70187, 2006 WL 83063, at *7 (E.D. Mich. Jan. 11, 2006). Through the MVPA, the Michigan legislature conferred a property interest in continued public employment, and Wayne State wrongfully deprived Plaintiff of that interest without "appropriate procedural safeguards." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 541 (1985); *see also Young v. Township of Green Oak*, F.3d 674, 684 (6th Cir. 2006) ("The VPA takes veterans out of an at-will employment regime and provides them with a property interest in their continued employment.").

2. **Plaintiff was entitled to notice and a hearing before the adverse employment action.**

"[T]he root requirement of the Due Process clause" is "that an individual be given the opportunity for a hearing before he is deprived of any significant property interest." *Loudermill*, 470 U.S. at 542 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis in original)). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.*

The case law is clear: the VPA entitles veterans to notice and a hearing prior to termination. *See Jackson*, 201 Mich. App. at 177. "The statute in clear language prohibits taking any employment action against a veteran until after there has been notice and a hearing." *Id.* (citing M.C.L. § 35.402).

### 3. The appropriate remedy

In *Jackson*, the court decided that "plaintiff [was] entitled to the protection of the VPA." *Jackson*, 201 Mich. App. at 177. In that case, the plaintiff – like Mr. Rudolph here – argued that he was entitled to automatic reinstatement with back pay. The court disagreed, explaining as follows:

> [T]he remedy the VPA provides for a violation of the right to notice and a hearing is not automatic reinstatement with back pay. Because Plaintiff was demoted without a hearing, he was required to file a written protest with the mayor or he would be deemed to have waived the protections of the VPA. M.C.L. § 35.402; M.S.A. § 4.1222. If Plaintiff filed such a protest, the mayor would be required to conduct a hearing, or refer the protest to the city's legal department to conduct a hearing. *Id.* Plaintiff would be entitled to back pay only if the mayor found plaintiff's allegations to be true and determined that he should be reinstated. *Id.*; *see also Valentine*, 371 Mich. at 147.

*Id.*

Likewise, Plaintiff here is not entitled to automatic reinstatement and back pay. Pursuant to the statute, Defendants shall provide Plaintiff with notice and a hearing before an impartial decision maker. The Court will revisit the issue of back pay if Plaintiff's allegations are determined to be true and if it is found that he is entitled to reinstatement.

## CONCLUSION

For the reasons explained above,

**IT IS ORDERED** that Defendants' Motion to Dismiss [17] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment, Declaratory Relief, and Reinstatement [24] is **GRANTED IN PART**. Pursuant to the Veterans Preference Act, Plaintiff is entitled to notice and a hearing before an impartial decision maker, who will determine the truth of Plaintiff's allegations and whether he is entitled to reinstatement.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: March 21, 2018　　　　　Senior United States District Judge